UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DOUGLAS CORNELL JACKSON,

                    Plaintiff,                              Case No. 2:23-cv-122

v.                                                          Honorable Robert J. Jonker

QUENTIN BOLTON et al.,

                    Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. On July 18,

2023, Magistrate Judge Vermaat issued an opinion and order (ECF Nos. 7 and 8) directing Plaintiff

to either (1) show cause as to why he should not be barred from proceeding *in forma pauperis* even

though Plaintiff has accrued "three strikes" pursuant to 28 U.S.C. § 1915(g); or (2) pay the full

filing fees. Plaintiff was directed to take either action within twenty-eight days. On July 26, 2023,

Plaintiff filed a "notice of appeal to district judge" (ECF No. 9), which the Court construed as

Plaintiff's response to Magistrate Judge Vermaat's opinion and order. In an order and judgment

(ECF Nos. 10 and 11), the Court concluded that Plaintiff had not sufficiently shown cause, denied

him leave to proceed *in forma pauperis*, and dismissed this action without prejudice.

        Plaintiff subsequently appealed. (ECF No. 12.) In an order (ECF No. 16) entered on

January 24, 2024, the United States Court of Appeals for the Sixth Circuit vacated this Court's

judgment and remanded the matter with instructions to allow Plaintiff to proceed *in forma*

*pauperis*. The Sixth Circuit concluded that Plaintiff had sufficiently alleged imminent danger of

physical harm through his allegations that Defendants Bomer and Collison threatened to kill

Plaintiff if he continued to pursue grievances and lawsuits. (*Id.*, PageID.124–125.) The Sixth Circuit's mandate (ECF No. 18) was issued on February 16, 2024. In light of the Sixth Circuit's order, the Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Hoult. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Bolton, Collison, and Bomer: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims for declaratory and injunctive relief; (3) Plaintiff's First Amendment retaliation claim against Defendant Bolton premised upon his placement of Plaintiff on modified grievance access status; (4) Plaintiff's First Amendment access to the courts claims; (5) Plaintiff's Eighth Amendment claims premised upon his placement in segregation and the conditions therein, as well as his claims premised upon Defendants Collison and Bomer's verbal harassment; and (6) Plaintiff's Fourteenth Amendment claims. The following personal capacity claims for damages against Defendants Bolton, Collison, and Bomer remain: (1) Plaintiff's First Amendment retaliation claim against Defendant Bolton premised upon his issuance of a class II misconduct ticket for interference with administration of the rules to Plaintiff; (2) Plaintiff's First Amendment retaliation claims against Defendants Collison and Bomer; and

(3) Plaintiff's Eighth Amendment claim against Defendant Bomer premised upon the razor Plaintiff found in his biscuit. Further, the Court will deny Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.50).

**Discussion**

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues the following MBP personnel: Deputy Warden Unknown Hoult, Grievance Coordinator Quentin Bolton, Counselor Kevin Collison, and Librarian Unknown Bomer. Plaintiff indicates he is suing all Defendants in their official and personal capacities. (Compl., ECF No. 1, PageID.4.)

Plaintiff arrived at MBP on February 22, 2023. (*Id.*, PageID.7.) He alleges that his "allowable excess legal property was searched prior to leaving [Ionia Correctional Facility (ICF)] and once again when it arrived at MBP." (*Id.*) Plaintiff was assigned to general population on February 28, 2023. (*Id.*)

On March 23, 2023, Plaintiff filed a grievance against Defendant Bomer, claiming that Defendant Bomer was "intentionally refusing to allow [Plaintiff] to meet with a competent legal writer for preparation of legal court documents." (*Id.*, PageID.8.) However, on April 4, 2023, Plaintiff was classified to the MBP segregation unit. (*Id.*) He received his property on April 7, 2023. (*Id.*)

On April 5, 2023, Defendant Bomer issued a contraband removal record to Plaintiff, alleging that Plaintiff's property included pages from a "2017 SADO defender habeas book, with property of AMF library stamped in red." (*Id.*) Plaintiff contends that these pages were no longer

3

current, and that the AMF librarian allowed him to "have the outdated pages instead of throwing them in the trash years ago." (*Id.*, PageID.9.) Plaintiff suggests that because the pages are no longer current, "the plausible reason for Defendant Bomer['s] actions is retaliation" for Plaintiff filing a grievance. (*Id.*)

On April 6, 2023, Defendant Bomer's assistant, non-party Chisholm, issued a class II misconduct ticket for possession of stolen property and theft to Plaintiff. (*Id.*) Plaintiff was found not guilty following a hearing on April 11, 2023. (*Id.*, PageID.10.) On April 13, 2023, Plaintiff "requested Defendant Bomer to return his confiscated legal property to no avail." (*Id.*)

Plaintiff filed a grievance against Defendant Bomer regarding the failure to return the legal property on April 19, 2023. (*Id.*) On April 26, 2023, Defendant Hoult issued a Notice of Intent (NOI) in conjunction with Defendant Bomer's April 5, 2023, contraband removal record. (*Id.*, PageID.11.) Plaintiff claims that the only plausible reason for Defendant Hoult to issue the NOI was to retaliate against Plaintiff because he was found not guilty of the class II misconduct and had filed a grievance against Defendant Bomer. (*Id.*) On May 1, 2023, Plaintiff filed a grievance against Defendant Hoult. (*Id.*)

On May 2, 2023, Defendant Collison conducted an administrative hearing regarding the NOI. (*Id.*) However, the hearing was adjourned because Defendant Collison "did not have the evidence identified in Defendant Hoult's April 26, 2023 NOI." (*Id.*) The next day, Defendant Hoult was walking through Plaintiff's unit and told Plaintiff, "I'm going to make a round tomorrow. You show me in the prisoner personal property [policy] where it says you can have your property." (*Id.*, PageID.12.) Plaintiff filed a grievance against Defendant Hoult regarding that statement, claiming that Defendant Hoult's remark "establish[ed] that he [was] actually [the] hearing officer." (*Id.*)

4

On May 9, 2023, Defendant Bolton issued Plaintiff a class II misconduct ticket for interference with the administration of rules. (*Id.*) Plaintiff claims that Defendant Bolton would not have issued the report if Plaintiff had not filed a grievance about Defendant Hoult. (*Id.*) On May 10, 2023, Plaintiff "provided Defendant Bolton notice of Bolton's retaliation." (*Id.*)

On May 18, 2023, Plaintiff asked Defendant Bomer for legal writer assistance to prepare a § 1983 complaint. (*Id.*, PageID.13.) Plaintiff identified Defendant Bolton as one of the purported defendants. (*Id.*) Defendant Bomer "intentionally refused to assist." (*Id.*, PageID.14.) Plaintiff contends that Defendant Bomer did so to retaliate against Plaintiff for his grievances. (*Id.*)

Plaintiff goes on to suggest that the May 18, 2023, incident was not the first time Defendant Bomer retaliated against him and refused him access to the courts. (*Id.*, PageID.15.) Plaintiff alleges that at some time in March of 2023, he asked Defendant Bomer for legal writer assistance to prepare and file: (1) an appeal of an order in *Jackson v. Pynnonen*, No. 2:20-cv-170 (W.D. Mich.); and (2) an appeal from orders in *Jackson v. Davids*, No. 1:21-cv-1060 (W.D. Mich.). (*Id.*)

According to Plaintiff, he wanted to appeal from the denial of his motion for relief from judgment in *Jackson v. Pynnonen*. (*Id.*) Plaintiff contends that he lost such relief because Defendant Bomer provided Plaintiff the notice of appeal after the filing deadline had expired, and because Defendant Bomer failed to "provide [Plaintiff] with the requested cause in writing, a response, or his court papers" when the Sixth Circuit directed Plaintiff to show cause why his appeal should not be dismissed as untimely. (*Id.*, PageID.16.) Plaintiff contends that in *Jackson v. Pynnonen*, he was challenging conditions that he encountered during a prior incarceration at AMF; specifically, an incident that occurred on April 15, 2020, when Plaintiff was pepper sprayed, lost consciousness, and then was placed in restraints for two days "without a shower or the ability to wash the chemical off his body." (*Id.*, PageID.17.)

Plaintiff also wanted to appeal various orders in *Jackson v. Davids*, where Plaintiff challenged prison conditions he encountered during his incarceration at ICF. (*Id.*) Specifically, Plaintiff alleged that medical staff refused to provide Plaintiff with his prescribed eye medication until he took a COVID-19 test. (*Id.*, PageID.18.) Staff also cancelled Plaintiff's scheduled appointment with the optometrist. (*Id.*)

On April 7, 2023, Defendant Bomer came to Plaintiff's cell in segregation "in a very hostile and aggressive manner demanding that [Plaintiff] affix his signature to papers addressed to a Mr. Thomas." (*Id.*) Plaintiff claims that even though Defendant Bomer knows that Plaintiff is hearing impaired, he issued a class II misconduct ticket for disobeying a direct order when Plaintiff turned to retrieve his hearing aids. (*Id.*) Plaintiff filed a grievance. (*Id.*, PageID.19.) He contends that on April 10, 2023, because of that grievance, Defendant Bomer refused to provide Plaintiff "state and federal precedent and court opinions needed for [Plaintiff] to prepare and file non-frivolous legal court papers on his own." (*Id.*) Plaintiff filed another grievance. (*Id.*) On April 11, 2023, Defendant Bomer refused to provide Plaintiff "with receipts properly itemizing his legal court documents that are in Bomer's possession." (*Id.*)

Plaintiff alleges further that Defendant Bomer refused to provide Plaintiff legal writer assistance to prepare and file a timely notice of appeal in *Jackson v. Perttu*, No. 2:21-cv-37 (W.D. Mich.), as well as to prepare and file "an application for permission to file a motion to lift stay, a motion to file an amended habeas corpus application, an amended habeas corpus application, and an affidavit." (*Id.*) Plaintiff asked for such assistance on April 10, 2023. (*Id.*, PageID.21.) He claims, however, that Defendant Bomer did not provide the notice of appeal until May 4, 2023. (*Id.*) Plaintiff alleges that as a result, the Sixth Circuit directed Plaintiff to show cause why his appeal should not be dismissed as untimely. (*Id.*, PageID.21–22.) On May 16, 2023, Plaintiff asked

for legal writer assistance to prepare a response to the Sixth Circuit's order. (*Id.*, PageID.22.)
Defendant Bomer refused to provide such assistance but gave Plaintiff a copy of the Sixth Circuit's
order on June 22, 2023. (*Id.*)

On April 26, 2023, Plaintiff asked Defendant Bomer for legal writer assistance for
"preparing and filing judicial review of the MDOC hearings administrator's April 20, 2023,
request for rehearing response." (*Id.*, PageID.25.) Plaintiff claims that Defendant Bomer did not
respond to his request until June 22, 2023, when he brought a letter to Plaintiff's cell. (*Id.*) The
letter was dated June 20, 2023, and stated in part: "I regret to inform you I won't be able to assist
you in filing a judicial review, as there is no legitimate reason why you missed the filing deadline."
(*Id.*)

On May 5, 2023, Defendant Collison conducted an administrative hearing regarding the
NOI Defendant Hoult issued to Plaintiff. (*Id.*, PageID.39.) Plaintiff claims that he did not receive
a copy of the hearing report. (*Id.*, PageID.40.) When he asked Defendant Collison, Defendant
Collison "feigned memory loss regarding the decision that he made at the hearing, thereby
hindering any appeal that may have been available to [Plaintiff]." (*Id.*)

On May 8, 2023, Plaintiff gave Defendant Bomer a legal photocopy disbursement
authorization form and asked him to make copies of a contraband removal record, misconduct
report, and class II hearing report. (*Id.*, PageID.22.) Defendant Bomer refused, telling Plaintiff, "I
don't make same day copies." (*Id.*)

On May 12, 2023, Plaintiff asked Defendant Bomer to make copies of a request for
rehearing response dated April 20, 2023; a January 20, 2023, request for rehearing; a January 9,
2023, class I misconduct report for assault and battery and threatening behavior; and a November
6, 2022, assault and battery threatening behavior misconduct report. (*Id.*, PageID.26.) Plaintiff

claims that he wanted to challenge the sufficiency of the evidence and raise an assertion that the hearing officer violated state law. (*Id.*) Defendant Bomer refused to provide assistance. (*Id.*)

On May 22, 2023, Defendant Bomer told Plaintiff that legal writer inmate Edward Pointer-Bey needed to meet with Plaintiff. (*Id.*, PageID.23.) The meeting was scheduled for May 23, 2023. (*Id.*) However, on that date, Plaintiff's housing unit was on lockdown. (*Id.*) By the time Defendant Bomer rescheduled the meeting, "the time for filing a judicial review had passed." (*Id.*) According to Plaintiff, the meeting was rescheduled for May 30, 2023, but Defendant Bomer "refused to ensure that the meeting took place." (*Id.*, PageID.24–25.)

On May 25, 2023, during legal mail rounds, Plaintiff told Defendant Collison that he needed oversized envelopes to submit legal documents to the courts. (*Id.*, PageID.40.) Plaintiff alleges that Defendant Collison failed to provide the envelopes, and that because of that failure, Plaintiff "presently . . . is unable to submit his legal pleadings to the court." (*Id.*, PageID.41.) Plaintiff filed a grievance against Defendant Collison on May 26, 2023. (*Id.*) On May 31, 2023, Defendant Bolton rejected the grievance and placed Plaintiff on modified access status. (*Id.*)

On May 26, 2023, Plaintiff was in the law library and was unable to use the Lexis Advance law library computer. (*Id.*, PageID.23.) He asked Defendant Bomer for assistance. (*Id.*) Defendant Bomer refused, stating, "If you get to a Level IV a clerk (prison[er]) will help you operate the Lexis Nexus program." (*Id.*)

On June 5, 2023, Plaintiff told Defendant Collison that Defendant Bomer had been refusing Plaintiff's requests for photocopies, thus restricting Plaintiff's access to the courts. (*Id.*, PageID.44.) Defendant Collison responded, "It is not my job to interpret MDOC policy." (*Id.*) He also told Plaintiff that he was not Defendant Bomer's supervisor. (*Id.*) Plaintiff claims that

Defendant Collison refused to report Defendant Bomer's misconduct "to the appropriate MBP official." (*Id.*)

On June 9, 2023, Defendant Bolton "addressed the merits of [Plaintiff's] request for a Step I grievance form and denied the request thereby preventing a Step II appeal of his merits-based findings." (*Id.*, PageID.23.) Defendant Bolton denied another request for a Step I grievance form on June 12, 2023. (*Id.*, PageID.45.)

Plaintiff goes on to allege that on June 13, 2023, Defendant Collison came to Plaintiff's cell during legal mail rounds and told Plaintiff:

> "You should stop thinking about your lawsuit against Mr. Bomer and Deputy Hoult. We have a brotherhood, and I'm advising you because I'm a Roman Catholic that bad things happen here all the time to prisoners that cause problems to the brotherhood. They get killed and assaulted. Their mail gets los[t], they cannot get legal writer assistance in time to meet their deadlines, their property is confiscated, los[t], or destroyed, and misconduct reports are fabricated. You will be found guilty Jackson."

(*Id.*, PageID.4.) Later that day, during a law library session, Defendant Bomer threatened to have Plaintiff killed if Plaintiff brought legal action against him, Defendant Hoult, or any other staff member at MBP. (*Id.*, PageID.5.) Defendant Bomer told Plaintiff, "You're in Marquette. We have a brotherhood up here. If you attempt any legal action against me, Hoult, or any others in the brotherhood you will be killed." (*Id.*) Plaintiff claims that Defendant Bomer had made similar remarks on May 26, 2023. (*Id.*)

That same day, Plaintiff was "falsely imprisoned in solitary confinement . . . without notice, or [a] misconduct report being issued." (*Id.*) All of Plaintiff's property, except for what was permitted in segregation, was taken to the MBP property room. (*Id.*) Plaintiff alleges that he was kept in solitary confinement for seven days, until June 20, 2023. (*Id.*) During his time in solitary confinement, Plaintiff "noticed that after each meal he would become nauseated and vomit the

contents of the meals. [As of the date of Plaintiff writing his complaint,] [t]he side effects continue[d] to . . . exist." (*Id.*, PageID.6.)

Plaintiff further claims that the cell that he was placed in had been "freshly painted and emitted very strong gas or vapor fumes." (*Id.*) The air ducts "contained dust as thick as sheep's wool, thereby creating poor ventilation." (*Id.*) Plaintiff contends that he continues to cough up phlegm as a result of those conditions, and that he "suffers from the effects of anxiety, humiliation, and daily degradation." (*Id.*)

On June 14, 2023, Defendant Collison came to Plaintiff's cell in segregation and said, "Didn't I tell you yesterday what would happen." (*Id.*) On June 22, 2023, Defendant Bomer came to Plaintiff's cell and said, "Here is your legal shit, I am not providing legal writer service. Oh yeah, enjoy your food." (*Id.*, PageID.7.) Plaintiff alleges that later that day, while eating dinner, he "discovered a razor blade inside his biscuit when he broke it apart." (*Id.*)

Based on the foregoing, Plaintiff asserts First Amendment retaliation and access to the courts claims. The Court also construes Plaintiff's complaint to assert Eighth Amendment claims premised upon his placement in segregation and the conditions therein, Defendants Bomer and Collison's verbal harassment, and the razor hidden in Plaintiff's biscuit, as well as Fourteenth Amendment due process claims premised upon placement in segregation, the allegedly false class II misconducts, the deprivation of Plaintiff's legal property, the handling of Plaintiff's grievances and his placement on modified access status, and violations of various MDOC policies and procedures. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.49–50.) Plaintiff also requests the appointment of counsel. (*Id.*, PageID.50.)

## II.    Request for Counsel

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992

F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Accordingly, Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.50) will be denied.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Official Capacity Claims

As noted above, Plaintiff sues Defendants in both their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly

abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979),

and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*,

803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for

the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit

under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir.

2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369

F. App'x 646, 653–54 (6th Cir. 2010).

Plaintiff seeks declaratory and injunctive relief, as well as damages. Official capacity

defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71;

*Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore,

will dismiss Plaintiff's damages claims against all Defendants in their official capacities.

An official capacity action seeking injunctive relief constitutes an exception to sovereign

immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh

Amendment immunity does not bar prospective injunctive relief against a state official).

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a

'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v.

Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiff is no longer confined at MBP. The Sixth Circuit has held that transfer to

another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See

Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896

(6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990);

*Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such

relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is now confined at AMF, and his complaint is devoid of any facts suggesting that Defendants are engaged in any ongoing violations of federal law. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Accordingly, the Court will dismiss Plaintiff's official capacity claims in their entirety.[1]

> **B.     Personal Capacity Claims**

> **1.     First Amendment Claims**

> **a.     Retaliation**

Throughout his complaint, Plaintiff contends that all Defendants retaliated against him, in violation of the First Amendment, in various ways.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse

---

[1] To the extent Plaintiff seeks declaratory and injunctive relief against Defendants in their individual capacities, such claims will also be dismissed for the reasons set forth above because whether relief is characterized as declaratory or injunctive, it is only "for purposes of prospective relief [that] a state official who violates federal law is 'stripped of his official or representative character'" under *Ex parte Young*. *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014) (quoting *Va. Office for Prot. and Advocacy v. Stewart*, 563 U.S. 247, 254 (2011)). Plaintiff makes no claim against these Defendants for prospective declaratory and injunctive relief.

action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that the various retaliatory acts occurred after he filed grievances and lawsuits. Plaintiff, therefore, has adequately alleged protected conduct for his retaliation claims. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court will consider below whether Plaintiff has adequately alleged facts regarding the second and third elements for each named Defendant.

### (i)      Defendant Hoult

Plaintiff alleges that on April 26, 2023, Defendant Hoult issued an NOI to Plaintiff in conjunction with Defendant Bomer's April 5, 2023, contraband removal record. (Compl., ECF No. 1, PageID.11.) Plaintiff avers that the only plausible reason for Defendant Hoult to issue the NOI was to retaliate against Plaintiff because he was found not guilty of the class II misconduct and had filed a grievance against Defendant Bomer. (*Id.*) Plaintiff alleges further that on May 3, 2023, Defendant Hoult was walking through Plaintiff's unit and told Plaintiff, "I'm going to make a round tomorrow. You show me in the prisoner personal property [policy] where it says you can have your property." (*Id.*, PageID.12.)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory

motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (holding that "bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Even assuming that Defendant Hoult acted adversely by issuing the NOI, Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendant Hoult. Plaintiff has alleged no *facts* to support his speculative belief that Defendant Hoult issued the NOI because Plaintiff was found not guilty of a class II misconduct and because Plaintiff had filed a grievance against Defendant Bomer. Plaintiff's complaint does not even allege that Defendant Hoult was aware of the outcome of Plaintiff's misconduct proceedings as well as the grievance Plaintiff filed. Simply because one event precedes another does not automatically show retaliation. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"). The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claim against Defendant Hoult.

### (ii)      Defendant Bolton

Plaintiff contends that Defendant Bolton retaliated against him by placing him on modified access status for the MDOC grievance system. To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606.

The Sixth Circuit, however, has repeatedly held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g.*, *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001). Placement on modified access would not deter a person of ordinary firmness from continuing to engage in protected conduct, because modified access status does not impair the ability to file civil rights actions in federal court. A plaintiff's placement on modified access to the grievance procedure merely enables prison officials to screen Plaintiff's grievances prior to filing to determine whether they were grievable, non-frivolous, and non-duplicative. *See Kennedy*, 20 F. App'x at 471 (citing Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP)). Plaintiff, therefore, cannot maintain a First Amendment retaliation claim against Defendant Bolton premised upon his act of having Plaintiff placed on modified access status. That claim will, therefore, be dismissed.

Plaintiff also suggests that Defendant Bolton retaliated against him by issuing a class II misconduct ticket for interference with the administration of rules after Plaintiff filed a grievance against Defendant Hoult. Under MDOC Policy Directive 03.03.105, an "Interference with the Administration of Rules" misconduct violation may be issued for "[a]cts intending to impede, disrupt, or mislead the disciplinary process for staff or prisoners." MDOC Policy Directive 03.03.105, Attach. B (eff. Apr. 18, 2022). If this charge is "written as a result of a grievance, it must be shown that [the] prisoner knew [the] allegation was false when s/he made it and intentionally filed a false grievance." *Id.*

In the event that an "Interference with the Administration of Rules" misconduct ticket is issued as a result of a previously filed grievance, all three elements of a retaliation claim are necessarily present because the misconduct ticket is issued for filing the grievance, and the filing of non-frivolous grievances is protected activity. Here, Plaintiff alleges that Defendant Bolton issued the misconduct ticket because of Plaintiff's grievance against Defendant Hoult, and that non-party MBP Warden Sarah Schroeder authorized Defendant Bolton to issue the ticket. (Compl., ECF No. 1, PageID.12–13.) Taking Plaintiff's factual allegations as true, the Court cannot conclude that Plaintiff's grievance against Defendant Hoult was frivolous. Thus, the grievance would constitute protected conduct, and the resulting adverse action—the issuance of the class II misconduct for interference with the administration of rules—was based on, and motivated by, Plaintiff's protected activity. Accordingly, at this stage of the proceedings, Plaintiff has adequately set forth a First Amendment retaliation claim against Defendant Bolton regarding the issuance of the interference with the administration of rules misconduct ticket.

### (iii) Defendants Collison and Bomer

Throughout his complaint, Plaintiff alleges that Defendants Collison and Bomer retaliated against him for filing grievances and lawsuits in various ways. For example, Plaintiff avers that Defendant Bomer: (1) refused to provide Plaintiff legal writer assistance on numerous occasions; (2) issued a contraband notice to Plaintiff regarding the pages from the SADO defender's guide; (3) refused to return Plaintiff's legal property even after he was found not guilty of the class II misconduct; (4) refused to provide copies and assistance with Lexis Advance; (5) threatened to have Plaintiff killed if he continued any legal action against any MBP staff; and (6) suggested that he was aware that there was a razor blade in Plaintiff's biscuit. As for Defendant Collison, Plaintiff alleges that he: (1) refused to provide a copy of the administrative hearing report regarding the NOI issued by Defendant Hoult to Plaintiff; (2) refused to provide oversized envelopes to Plaintiff; and (3) threatened that Plaintiff would experience negative consequences, including being killed and assaulted, if he continued to press forward on his legal actions against MBP staff.

At this juncture, the Court finds that Plaintiff has adequately alleged that Defendants Collison and Bomer acted adversely. Moreover, Plaintiff has set forth allegations suggesting that Defendants Collison and Bomer acted adversely because of Plaintiff's grievances and lawsuits. Although Plaintiff has by no means proven retaliation, taking his allegations as true and in the light most favorable to him, the Court concludes that Plaintiff's retaliation claims against Defendants Collison and Bomer may not be dismissed on initial review.

### b. Access to the Courts

Throughout his complaint, Plaintiff contends that Defendants Bolton, Bomer, and Collison violated his First Amendment right to access the courts in various ways.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states

must protect the right of access to the courts by providing law libraries or alternative sources of

legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries

or alternative sources of legal knowledge, the states must provide indigent inmates with "paper

and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail

them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting

barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996,

1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however,

without limit. In order to state a viable claim for interference with his access to the courts, a

plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey*

*v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff

must plead and demonstrate that the shortcomings in the prison legal assistance program or lack

of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous

legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

1996). The Supreme Court has strictly limited the types of cases for which there may be an actual

injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions
> to slip-and-fall claims. The tools it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover,

the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord*

20

*Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

With that backdrop in mind, the Court considers Plaintiff's various access to the courts claims below.

### a.  Defendant Bolton

First, Plaintiff suggests that Defendant Bolton violated his right to access the courts by interfering with Plaintiff's right to file grievances. (Compl., ECF No. 1, PageID.47.) According to Plaintiff, Defendant Bolton's placement of Plaintiff on modified access status has impeded Plaintiff's right to access the courts because placement on such status "prevents proper exhaustion of non-frivolous meritorious claims and [Plaintiff's] administrative remedies." (*Id.*, PageID.48.)

As an initial matter, Plaintiff's right to petition the government was not violated by Defendant Bolton's placement of Plaintiff on modified access status. The First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). Moreover, Defendant Bolton's actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while

leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff was unable to file and appeal grievances, his right to access the courts to petition for redress (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See Lewis*, 518 U.S. at 355; *Bounds*, 43 U.S. at 821-24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy,* 20 F. App'x at 470.

For the foregoing reasons, Plaintiff's First Amendment access to the courts claim against Defendant Bolton will be dismissed.

### b.    Defendant Collison

Plaintiff first faults Defendant Collison for failing to provide Plaintiff a copy of the administrative hearing report from the May 5, 2023, hearing Defendant Collison conducted regarding the NOI issued by Defendant Hoult. (Compl., ECF No. 1, PageID.39–40.) Plaintiff suggests that Defendant Collison "feigned memory loss regarding the decision he made at the hearing, thereby hindering any appeal that may have been available to [Plaintiff]." (*Id.*)

Plaintiff's complaint is devoid of facts suggesting that any appeal from the administrative hearing would have been the type of litigation protected by the First Amendment right to access

the courts. In any event, Plaintiff also fails to allege facts regarding any lost remedy. Indeed, Plaintiff only speculates that an appeal may have been available to him and provides no information regarding what he would have asserted in such an appeal.

Plaintiff also suggests that Defendant Collison violated his First Amendment right to access the courts by rejecting Plaintiff's request for oversized envelopes on May 25 and 26, 2023. (*Id.*, PageID.40–41.) Plaintiff contends that "presently [he] is unable to submit his legal pleadings to the court." (*Id.*) Again, Plaintiff provides no facts regarding the nature of the legal pleadings he wished to submit using the oversized envelopes. Notably, Plaintiff was able to submit the instant lawsuit, which the Court received on July 7, 2023. He also fails to allege any facts regarding any lost remedy from Defendant Collison's failure to provide oversized envelopes.

In sum, Plaintiff has not set forth a plausible First Amendment access to the courts claim against Defendant Collison. Accordingly, such claims will be dismissed.

### c.    Defendant Bomer

Throughout his complaint, Plaintiff suggests that Defendant Bomer took various actions (or inactions) that impeded Plaintiff's right to access the courts in several lawsuits. The Court considers each of those below.

### (i)    Failure to Provide Receipts and Case Law

Plaintiff vaguely suggests that Defendant Bomer refused to provide him with "receipts properly itemizing [Plaintiff's] legal court documents that [were] in Bomer's possession." (Compl., ECF No. 1, PageID.19.) Plaintiff also faults Defendant Bomer for refusing to provide "state and federal precedent and court opinions needed for [Plaintiff] to prepare and file non-frivolous legal court papers on his own." (*Id.*) Plaintiff's complaint, however, is completely devoid of facts regarding the underlying causes of action that he wished to file. Moreover, his complaint fails to detail any lost remedy as a result of not receiving these receipts and opinions. Accordingly,

any First Amendment access to the courts claim premised upon Defendant Bomer's failure to provide receipts and opinions will be dismissed.

### (ii)     *Jackson v. Pynnonen*, No. 2:20-cv-170

Plaintiff also faults Defendant Bomer for refusing to provide legal writer assistance so that Plaintiff could file a timely notice of appeal from this Court's Marc 3, 2023, order in *Jackson v. Pynnonen*, No. 2:20-cv-170 (W.D. Mich). (Compl., ECF No. 1, PageID.15.)

The public docket for *Jackson v. Pynnonen* reflects that on November 22, 2021, after conducting a bench trial regarding the issue of exhaustion, Magistrate Judge Vermaat issued a Report and Recommendation (R&R) recommending that Plaintiff's complaint be dismissed without prejudice for failure to properly exhaust his administrative remedies. *See* R&R, *Jackson v. Pynnonen*, No. 2:20-cv-170 (W.D. Mich.), (ECF No. 119). On January 11, 2022, Chief Judge Jarbou issued an order and judgment adopting the R&R and dismissing the case. *See* Ord. & J., *id.*, (ECF Nos. 125, 126). Plaintiff subsequently filed a motion for relief from judgment, which was denied. *See* Order, *id.*, (ECF No. 135).

Plaintiff filed a notice of appeal on April 17, 2023. *See* Notice of Appeal, *id.*, (ECF No. 138). In an order entered on April 21, 2023, the Sixth Circuit directed Plaintiff to show cause why the appeal should not be dismissed as untimely. *See* Order, *id.*, (ECF No. 141). Plaintiff subsequently moved for an extension of time to file a notice of appeal in this Court. *See* Mot., *id.*, (ECF No. 142). The Sixth Circuit subsequently remanded the case to this Court for consideration of that motion. *See* Order, *id.*, (ECF No. 148). In an order entered on July 20, 2023, Magistrate Judge Vermaat denied Plaintiff's motion for an extension of time to appeal, noting that the motion was untimely under Rule 4(a)(5)(A)(i) of the Federal Rules of Appellate Procedure. *See* Order, *id.*, (ECF No. 149). Chief Judge Jarbou denied Plaintiff's appeal from that order. *See* Order, *id.*, (ECF

24

No. 152). Ultimately, the Sixth Circuit dismissed Plaintiff's appeal as untimely in an order entered on October 3, 2023. *See* Order, *id.*, (ECF No. 157).

*Jackson v. Pynnonen* is a civil rights suit that qualifies as a proper underlying action for purposes of an access to the courts claim. Plaintiff's complaint, however, fails to set forth facts from which the Court can infer any lost remedy because of Defendant Bomer's alleged failure to provide legal writer assistance to Plaintiff. The Federal Rules of Appellate Procedure provide that a notice of appeal must: (1) specify the party or parties taking the appeal; (2) designate the judgment or order from which the appeal is taken; and (3) name the court to which the appeal is taken. *See* Fed. R. App. P. 3(c). Notably, "[t]he notice of appeal is supposed to be a simple document." *See id.*, Advisory Committee Notes, 2021 Amendment.

Plaintiff is a frequent litigant in the federal courts and has filed several notices of appeal in his various cases. Plaintiff provides no explanation for why he required legal writer assistance to file a simple, timely notice of appeal in *Jackson v. Pynnonen*. Moreover, given that the case was dismissed without prejudice for failure to exhaust administrative remedies, Plaintiff could have refiled his complaint once he exhausted such remedies. Furthermore, his complaint in the present action fails to provide any facts detailing what he would have asserted in a timely appeal to the Sixth Circuit. Given these circumstances, Plaintiff has failed to set forth a plausible First Amendment access to the courts claim against Defendant Bomer with respect to the failure to provide legal writer assistance for *Jackson v. Pynnonen*.

### (iii)  *Jackson v. Davids,* No. 1:21-cv-1060

Next, Plaintiff faults Defendant Bomer for not providing legal writer assistance so that Plaintiff could appeal from this Court's February 22, 2023, order in *Jackson v. Davids*, No. 1:21-cv-1060 (W.D. Mich.). (Compl., ECF No. 1, PageID.15.)

The public docket for *Jackson v. Davids* indicates that on January 17, 2023, Magistrate Judge Green issued an R&R recommending that the remaining defendant's motion for summary judgment be granted on the basis that Plaintiff had failed to exhaust his available administrative remedies. *See* R&R, *Jackson v. Davids*, No. 1:21-cv-1060 (W.D. Mich.), (ECF No. 84). The undersigned entered an order and judgment adopting the R&R and dismissing the action without prejudice on February 22, 2023. *See* Order & J., *id.*, (ECF Nos. 101 and 102). Subsequently, however, the Court received timely filed objections to the R&R from Plaintiff. Accordingly, in an order and amended judgment entered on March 29, 2023, the undersigned vacated the prior order and judgment, overruled Plaintiff's objections, adopted the R&R, and again dismissed the action without prejudice. *See* Order & Am. J., *id.*, (ECF Nos. 108, 109).

This access to the courts claim against Defendant Bomer fares no better than the claim premised upon Plaintiff's litigation in *Jackson v. Pynnonen*. As an initial matter, when the February 22, 2023, order and judgment were vacated, those documents were no longer final, appealable orders in *Jackson v. Davids*. Even so, Plaintiff does not explain why he required legal writer assistance to file a simple notice of appeal. Notably, the public docket reflects that Plaintiff never filed a notice of appeal from the Court's March 29, 2023, order and amended judgment. Again, Plaintiff's claims against the remaining defendant were dismissed without prejudice for failure to exhaust, and his complaint fails to provide any facts detailing what he would have asserted in a timely appeal to the Sixth Circuit. Given these circumstances, Plaintiff has failed to set forth a plausible First Amendment access to the courts claim against Defendant Bomer with respect to the failure to provide legal writer assistance for *Jackson v. Davids*.

**(iv)**     ***Jackson v. Perttu*, No. 2:21-cv-37**

Plaintiff also faults Defendant Bomer for not providing legal writer assistance so that Plaintiff could file a timely notice of appeal in *Jackson v. Perttu*, No. 2:21-cv-37 (W.D. Mich.). (Compl., ECF No. 1, PageID.19.)

The public docket for that case reflects that on December 1, 2022, after holding a hearing regarding exhaustion, Magistrate Judge Vermaat entered an R&R recommending that Plaintiff's complaint be dismissed without prejudice for failure to exhaust his available administrative remedies. *See* R&R, *Jackson v. Perttu*, No. 2:21-cv-37 (W.D. Mich.), (ECF No. 90). On March 30, 2023, Judge Beckering entered an opinion, order, and judgment adopting the R&R and dismissing the complaint without prejudice. *See* Op., Order, and J., *id.*, (ECF Nos. 103, 104). Plaintiff filed his notice of appeal on May 8, 2023. In an order entered on May 10, 2023, the Sixth Circuit directed Plaintiff to show cause why his appeal should not be dismissed as untimely. *See* Order, *id.*, (ECF No. 109). On July 10, 2023, the Sixth Circuit entered an order and judgment dismissing Plaintiff's appeal for lack of jurisdiction as untimely. *See* Order & J., *id.* (ECF Nos. 111, 112).

Yet again, this claim fares no better than Plaintiff's claims regarding *Jackson v. Pynnonen* and *Jackson v. Davids*. Plaintiff's complaint in *Jackson v. Perttu* was dismissed without prejudice for failure to exhaust, and so Plaintiff could have refiled his complaint once he exhausted his remedies. Moreover, Plaintiff's complaint fails to provide any facts detailing what he would have asserted in a timely appeal to the Sixth Circuit. He again fails to explain why he required legal writer assistance to prepare a simple notice of appeal. Given these circumstances, Plaintiff has failed to set forth a plausible First Amendment access to the courts claim against Defendant Bomer with respect to the failure to provide legal writer assistance for *Jackson v. Perttu*.

### (v)       Habeas Corpus Action

Next, Plaintiff vaguely mentions that Defendant Bomer failed to provide legal writer assistance so that Plaintiff could file "an application for permission to file a motion to lift stay, a motion to file an amended habeas corpus application, an amended habeas corpus application, and an affidavit." (Compl., ECF No. 1, PageID.19.) Plaintiff's complaint, however, is completely devoid of facts regarding the grounds for relief he wished to raise in this action. Likewise, the complaint is devoid of any facts from which the Court could infer a lost remedy. Accordingly, Plaintiff's First Amendment access to the courts claim against Defendant Bomer premised upon his failure to provide legal writer assistance to Plaintiff for a habeas corpus action will be dismissed.

### (vi)       Failure to Provide Copies

Plaintiff alleges further that on May 8, 2023, he gave Defendant Bomer a legal photocopy disbursement authorization form, along with a contraband removal record, misconduct report, and class II hearing report, and asked for copies to be made. (Compl., ECF No. 1, PageID.22.) Defendant Bomer refused, stating, "I don't make same day copies." (*Id.*) Plaintiff, however, fails to allege any facts regarding the underlying cause of action for which he wanted the copies, nor does he allege any facts regarding any lost remedy. Accordingly, Plaintiff cannot maintain a First Amendment access to the courts claim against Defendant Bomer for failure to provide such copies.

### (vii)       Failure to Assist with Lexis Advance

Next, Plaintiff faults Defendant Bomer for refusing to assist Plaintiff with the Lexis Advance computer during Plaintiff's law library time. (*Id.*, PageID.23.) Yet again, Plaintiff fails to describe the cause of action he was researching, and he fails to describe any lost remedy.

Accordingly, any First Amendment access to the courts claim premised upon Defendant Bomer's failure to provide assistance with the Lexis computer will be dismissed.

### (viii)   Interference with Judicial Review

Plaintiff also suggests that Defendant Bomer interfered with his ability to seek judicial review of a class I misconduct conviction by refusing to provide assistance in preparing the complaint. (Compl., ECF No. 1, PageID.26.) Plaintiff details that on November 6, 2022, while incarcerated at AMF, he received a class I assault and battery and threatening behavior misconduct ticket from Officer Yubarra. (*Id.*, PageID.27.) Plaintiff contends that he was convicted of the misconduct even though the hearing was not properly conducted pursuant to state law. Plaintiff argues that the "los[t] remedy is [Plaintiff's] opportunity to have those [a]forementioned charges vacated and his prison record expunge[d] of those charges, and loss [of] good time credits restored." (*Id.*, PageID.30.)

This Court has previously noted that "a petition for judicial review of a misconduct conviction is not an attack on the prisoner's conviction or sentence[,] nor is it a challenge to the conditions of confinement." *Sanders v. Washington*, No. 1:21-cv-54, 2021 WL 1049876, at *4 (W.D. Mich. Mar. 19, 2021) (citing, *inter alia*, *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005)). Moreover, the Sixth Circuit has held that the inability to appeal a misconduct conviction does not amount to actual injury for purposes of an access to the courts claim. *See Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001). Plaintiff, therefore, cannot maintain a First Amendment claim premised upon Defendant Bomer's alleged failure to provide legal assistance for Plaintiff to appeal a misconduct conviction.

### (ix)  *Jackson v. Lorendo*, No. 2:21-cv-13

Finally, Plaintiff alleges that Defendant Bomer refused to provide Plaintiff with legal writer assistance so that Plaintiff could file a timely appeal in *Jackson v. Lorendo*, No. 2:21-cv-13. (Compl., ECF No. 1, PageID.37.)

The public docket reflects that on September 16, 2022, Magistrate Judge Vermaat issued an R&R recommending that Plaintiff's action be dismissed for failure to prosecute. *See* R&R, *Jackson v. Lorendo*, No. 2:21-cv-13 (W.D. Mich.), (ECF No. 117). Magistrate Judge Vermaat made this recommendation based upon the fact that during a conference call, Plaintiff interrupted Magistrate Judge Vermaat several times and continued to do so even after repeatedly being told not to. Magistrate Judge Vermaat noted that he was forced to end the call before all issues could be fully addressed because of Plaintiff's behavior. In the R&R, Magistrate Judge Vermaat noted that this was not the first time Plaintiff had exhibited such behavior and that Plaintiff had other cases dismissed for similar reasons. On October 6, 2022, the undersigned entered an order and judgment adopting the R&R and dismissing the case. *See* Order & J., *id.*, (ECF Nos. 126, 127).

Plaintiff subsequently filed for reconsideration, which was denied. Plaintiff then filed a timely notice of appeal. In an order entered on July 10, 2023, the Sixth Circuit denied Plaintiff leave to proceed *in forma pauperis* and directed him to pay the full appellate filing fee within 30 days. *See* Order, *id.*, (ECF No. 149). Plaintiff failed to do so. Accordingly, in an order entered on August 10, 2023, the Sixth Circuit dismissed Plaintiff's appeal for lack of prosecution. *See* Order, *id.*, (ECF No. 151).

Contrary to Plaintiff's assertions, Defendant Bomer's refusal to provide legal writer assistance in no way impeded Plaintiff from filing a timely notice of appeal in *Jackson v. Lorendo*. Again, Plaintiff is a frequent litigant, and he fails to explain why he required assistance in the first

place. Nevertheless, the fact that Plaintiff's appeal was dismissed for lack of prosecution can be attributed to only one person—Plaintiff himself. Plaintiff, therefore, cannot maintain a First Amendment access to the courts claim against Defendant Bomer premised upon any refusal to provide legal writer assistance to file a notice of appeal in *Jackson v. Lorendo*.

In sum, none of Plaintiff's numerous allegations concerning Defendant Bomer's conduct rise to the level of a violation of the First Amendment right to access the courts. Accordingly, all of Plaintiff's access to the courts claims against Defendant Bomer will be dismissed.

### 2. Eighth Amendment Claims

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon his placement in segregation and the conditions therein, Defendants Bomer and Collison's verbal harassment, and the razor hidden in Plaintiff's biscuit.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.    Segregation and Conditions Therein

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon his placements in segregation, as well as the conditions he alleges he experienced in segregation from June 13–20, 2023. Plaintiff alleges that during that week in segregation, he "noticed that after each meal he would become nauseated and vomit the contents of the meals." (Compl., ECF No. 1, PageID.6.) Plaintiff also alleges that he coughed upon phlegm because the

32

cell had been freshly painted and "emitted very strong gas or vapor fumes," and that the "air ducts contained dust as thick as sheep's wool, thereby creating poor ventilation." (*Id.*)

As an initial matter, the Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of placement in segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Thus, any Eighth Amendment claims premised solely upon Plaintiff's placement in segregation will be dismissed.

With respect to Plaintiff's allegation concerning meals, the Eighth Amendment "imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoner receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832.) However, while the Court is sympathetic to Plaintiff's allegation that he became nauseated and vomited during his week-long stay in segregation in June of 2023, Plaintiff's complaint is devoid of facts from which the Court could infer that any of the named Defendants were aware that the meals provided posed any risk to Plaintiff and deliberately ignored that risk. Notably, Plaintiff does not allege that he told any of the named Defendants about his nausea and vomiting. Accordingly, any Eighth Amendment claims regarding the meals Plaintiff received in segregation will be dismissed.

Plaintiff also takes issue with the poor ventilation he experienced during his week in segregation. In extreme circumstances, courts have found that inadequate ventilation may result in a sufficiently serious risk to prisoner safety under the Eighth Amendment. *See, e.g.*, *White v. Monohan*, 326 F. App'x 385 (7th Cir. 2009) (reversing district court dismissal of claim alleging that inadequate ventilation permitted temperatures to reach 110 degrees during the summer months); *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) (finding that the Eighth Amendment was

violated by a ventilation system that allowed summer temperatures to average in the 90s, unless prison officials took measures to ameliorate the heat by providing fans, ice water and daily showers); *Keenan v. Hall*, 83 F.3d 1083 (9th Cir.1996) (allowing a prisoner's claim that his cell was "[s]aturated with the [f]umes of [f]eces (thrown by some inmates), the smell of urine and vomit as well as other stale body odors" to proceed). However, absent such extreme conditions raising serious risks to prisoner health, courts routinely have determined that claims concerning ventilation are insufficient to state an Eighth Amendment claim. *See, e.g.*, *Vasquez v. Frank*, 290 F. App'x 927 (7th Cir. 2008) (holding that ventilation that allegedly caused dizziness, migraines, nasal congestion, nose bleeds and difficulty breathing did not rise to the level of an Eighth Amendment violation); *Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) (citing cases and concluding that a ventilation system that allowed summer temperatures to average eighty-five or eighty-six degrees during the day and eighty degrees at night was not sufficiently extreme to violate the Eighth Amendment, where such temperatures were expected and tolerated by the general public in Florida); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (upholding the dismissal of a prisoner's claim that the confiscation of his extension cord, which was needed to operate a fan, deprived him of constitutionally adequate ventilation), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Bourrage v. McFarland*, No. 99-60923, 248 F.3d 1143, 2001 WL 185034 (5th Cir. Feb. 6, 2001) (upholding dismissal of a prisoner's claim that inadequate ventilation had led to his prescription for an Albuterol Inhaler); *Jasman v. Schmidt*, 4 F. App'x 233, 235–36 (6th Cir. 2001) (affirming dismissal of a claim that the weatherstripping on the doors of the cells at a Michigan prison prevented air circulation and resulted in inadequate ventilation); *Davis v. Crowley*, No. 00-1475, 238 F.3d 420, 2000 WL 1871891 (6th Cir. Dec. 12, 2000) (concluding that a plaintiff's allegations that a ventilation system smelled strongly of gas

did not allege a sufficiently serious harm where, despite his allegations that the fumes caused him to experience shortness of breath and watery eyes, the plaintiff failed to allege a substantial risk of serious harm); *Thompson v. Cnty. of Medina*, 29 F.3d 238 (6th Cir.1994) (upholding a dismissal of pretrial detainees' claim that a jail had inadequate ventilation); *King v. Berghuis*, No.1:10-cv-57, 2010 WL 565373, at *3 (W.D. Mich. Feb. 13, 2010) (dismissing prisoners' claim alleging that ventilation system moves less than 10 cubic feet of air and caused headaches).

Here, Plaintiff alleges only that the recent painting of the cell "emitted very strong gas or vapor fumes." (Compl., ECF No. 1, PageID.6.) He also asserts that the "air ducts contained dust as thick as sheep's wool, thereby creating poor ventilation." (*Id.*) Plaintiff states that these conditions caused him to cough up phlegm. (*Id.*) While the Court is sympathetic to Plaintiff's allegations, he fails to allege facts that suggest a substantial risk of serious harm. Moreover, Plaintiff fails to allege facts suggesting that any of the named Defendants were aware of these conditions and ignored them. Accordingly, any Eighth Amendment claims regarding the ventilation in Plaintiff's segregation cell will be dismissed.

### b.    Verbal Harassment

The Court has also construed Plaintiff's complaint to assert that Defendants Bomer and Collison violated Plaintiff's Eighth Amendment rights by verbally harassing him and threatening to have him killed if he continued to file grievances and lawsuits against staff at MBP.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim);

*Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

With respect to Plaintiff's allegations that Defendants Bomer and Collison threatened to have him killed, the Sixth Circuit recently addressed, as a matter of first impression, whether "unprovoked and repeated threats to a prisoner's life, combined with a demonstrated means to immediately carry out such threats, constitute conduct so objectively serious as to" violate the Eighth Amendment. *See Small v. Brock*, 963 F.3d 539, 541 (6th Cir. 2020). In *Small*, the plaintiff alleged that the officer had "brandished a knife, threatened to kill Small, and motioned in a manner suggesting how [he] would use the knife to kill Small." *Id.* at 540. The Sixth Circuit held that an inmate sets forth a plausible Eighth Amendment claim when repeated verbal threats to the inmate's life were combined with "concrete steps, such as aggressively brandishing a deadly weapon, to make those threats credible." *Id.* at 541 (citing cases for the proposition that "'objectively credible' death threats that cause a prisoner to fear for his life violate the Eighth Amendment").

Here, however, Plaintiff has not set forth any facts suggesting that Defendants Bomer and Collison's threats were repeated and that they were combined with concrete steps to make those

threats credible. Nowhere in Plaintiff's complaint does he allege that either Defendant Bomer or Defendant Collison brandished a deadly weapon or object when they made the threats. Accordingly, Plaintiff's allegations that Defendants Bomer and Collison threatened to have him killed do not rise to the level of the threats at issue in *Small*.

For the reasons set forth above, any Eighth Amendment claims premised upon Defendants Bomer and Collison's verbal harassment and threats will be dismissed.

### c.      Razor in Biscuit

Finally, Plaintiff alleges that on June 22, 2023, when Defendant Bomer came to his cell, Defendant Bomer said, "Here is your legal shit, I am not providing legal writer service. Oh yeah, enjoy your food." (Compl., ECF No. 1, PageID.7.) Plaintiff contends that later that day, while eating dinner, he "discovered a razor blade inside his biscuit when he broke it apart." (*Id.*) The Court has construed Plaintiff's complaint to assert an Eighth Amendment claim against Defendant Bomer premised upon these allegations.

Intentionally tampering with an inmate's food by placing a foreign object, such as a razor, inside of it can certainly rise to the level of deliberate indifference to a serious risk of harm. Here, while Plaintiff has by no means proven deliberate indifference, his allegations, especially his allegation that Defendant Bomer told him to "enjoy his food" on the same day that he found a razor blade in his biscuit, permit an inference that Defendant Bomer was aware of the presence of the razor and did not act to prevent the tampered-with tray from being served to Plaintiff. In light of these allegations, Plaintiff's Eighth Amendment claim against Defendant Bomer may not be dismissed on initial review.

### 3.    Fourteenth Amendment Claims

#### a.    False Misconducts

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment procedural due process claims premised upon the issuance of allegedly false misconduct tickets. As set forth above, Plaintiff alleges that on April 6, 2023, Defendant Bomer's assistant, Chisholm, issued Plaintiff a class II misconduct for possession of stolen property and theft. (Compl., ECF No. 1, PageID.9.) Plaintiff was ultimately found not guilty. (*Id.*, PageID.10.) Plaintiff also references a class II misconduct for interference with the administration of rules that he received from Defendant Bolton. (*Id.*, PageID.12.) He claims further that Defendant Bomer issued a class II misconduct ticket for disobeying a direct order when Plaintiff turned to retrieve his hearing aids. (*Id.*)

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id.* ¶ DDDD.

Plaintiff indicates that he was found not guilty of the class II misconduct charging him with possession of stolen property and theft. (Compl., ECF No. 1, PageID.10.) Plaintiff, therefore, received due process of law with respect to that ticket. "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or

falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414, 1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were protected when, at an administrative hearing concerning the ticket, [the inmate] was found not guilty and the ticket was dismissed").

With respect to the class II misconducts for interference with administration of rules and disobeying a direct order, Plaintiff does not indicate whether he was ultimately found guilty of those misconducts. In any event, the Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time—such as class II misconducts—are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

In sum, any Fourteenth Amendment procedural due process claims premised upon the issuance of allegedly false class II misconducts will be dismissed.

### b.   Placement in Segregation

The Court has also construed Plaintiff's complaint to assert a Fourteenth Amendment due process claim premised upon his placement in segregation on April 4, 2023, as well as his subsequent seven-day placement in solitary confinement (segregation) from June 13, 2023, until June 20, 2023.

Plaintiff does not suggest that he was placed in segregation as a result of any misconduct convictions. Nevertheless, placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 794. Generally, periods of segregation lasting several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Here, Plaintiff does not provide facts regarding the length of his first stay in segregation. He does indicate that he was in segregation for a week in June of 2023. Based on the facts alleged in the complaint, the duration of Plaintiff's placement in segregation was far less than the several years or more at issue in *Selby*, *Harris*, and *Harden-Bey*. Plaintiff, therefore, cannot maintain procedural due process claims against Defendants premised upon his stays in segregation, and such claims will be dismissed.

### c.    Deprivation of Legal Property

The Court has also construed Plaintiff's complaint to assert a Fourteenth Amendment due process claim against Defendant Bomer premised upon the confiscation of the pages from the 2017 SADO defender habeas book from Plaintiff's property.

Any such claim, however, is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112 ¶ B (eff. Dec. 12, 2013). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges

no reason why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

### d.    Handling of Plaintiff's Grievances and Placement on Modified Access Status

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon Defendants' handling of his various grievances, as well as the decision to place Plaintiff on modified access status. Plaintiff, however, has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

### e.    Violations of MDOC Policy and Procedure

Throughout his complaint, Plaintiff appears to fault Defendants for not abiding by various MDOC policies and procedures. Such assertions, however, fail to state a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or prison policy. *Pyles v. Raisor*, 60

F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Accordingly, any Fourteenth Amendment due process claims premised upon violations of MDOC policy and procedure will be dismissed.

### f. Substantive Due Process

To the extent Plaintiff suggests that any of Defendants' actions violated his substantive due process rights, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, is devoid of any

allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff. Moreover, Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.

Further, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments, as well as the Fourteenth Amendment's procedural due process clause, apply to Plaintiff's various constitutional claims. Consequently, any intended substantive due process claims will be dismissed.

## Conclusion

For the reasons set forth above, the Court will grant Plaintiff leave to proceed *in forma pauperis* (ECF No. 2) and deny Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.50). Moreover, having conducted the review required by the PLRA, the Court determines that Defendant Hoult will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Bolton, Collison, and Bomer: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims for declaratory and injunctive relief; (3) Plaintiff's First Amendment retaliation claim against Defendant Bolton premised upon his placement of Plaintiff on modified grievance access status; (4) Plaintiff's First Amendment

access to the courts claims; (5) Plaintiff's Eighth Amendment claims premised upon his placement in segregation and the conditions therein, as well as his claims premised upon Defendants Collison and Bomer's verbal harassment; and (6) Plaintiff's Fourteenth Amendment claims. The following personal capacity claims for damages against Defendants Bolton, Collison, and Bomer remain: (1) Plaintiff's First Amendment retaliation claim against Defendant Bolton premised upon his issuance of a class II misconduct ticket for interference with administration of the rules to Plaintiff; (2) Plaintiff's First Amendment retaliation claims against Defendants Collison and Bomer; and (3) Plaintiff's Eighth Amendment claim against Defendant Bomer premised upon the razor Plaintiff found in his biscuit.

An order consistent with this opinion will be entered.

Dated:     March 29, 2024          /s/ Robert J. Jonker
                                  Robert J. Jonker
                                  United States District Judge