UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

DOUGLAS CORNELL JACKSON #748757,

        Plaintiff,

    v.

BOLTON, et al.,

        Defendants.

_____/

Case No. 2:23-cv-122

Hon.  Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation addresses Defendants' motion for summary judgment (ECF No. 97), Plaintiff's response in opposition (ECF No. 113), and Defendants' reply (ECF No. 116).

Plaintiff – state prisoner Douglas Cornell Jackson – filed a civil complaint under 42 U.S.C. § 1983 alleging that Defendants violated his First, Eighth, and Fourteenth Amendments rights while he was a prisoner at the Marquette Branch Prison (MBP) in Marquette, MI.   (ECF No. 1.)

In 2023, this Court denied Jackson's request to proceed *in forma pauperis* (IFP) and dismissed the case after he failed to pay the filing fee.   (ECF Nos. 7-11.) Jackson appealed, and the Court of Appeals remanded the case with instructions to allow Jackson to proceed IFP.   (ECF Nos. 16, 17.)   This Court issued a screening opinion dismissing several of Jackson's claims and one of the original Defendants. (ECF Nos. 22, 23.)

1

Following screening, this Court granted Defendants' motion for summary judgment based on exhaustion and dismissed five additional retaliation claims. At this point in the case, the following seven claims remain, listed in the order analyzed below:

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
| 1 | Defendant retaliated by issuing contraband notice for pages from guide issued by the State Appellate Defender Officer. | Bomer | April 6, 2023 |
| 2 | Defendant retaliated by refusing to return legal property after hearing officer's not guilty finding on class II misconduct. | Bomer | April 13, 2023 |
| 3 | Defendant retaliated by refusing to provide a legal writer. | Bomer | May – June of 2023 |
| 4 | Defendant retaliated by refusing to provide Lexis Advance research assistance. | Bomer | April – May 2023 |
| 5 | Defendant retaliated by refusing to provide copies. | Bomer and Collison | April – May 2023 |
| 6 | Defendant retaliated by refusing to provide a copy of the administrative hearing report regarding Notice of Intent issued by Hoult. | Collison | May 2, 2023 |
| 7 | Defendant retaliated by issuing misconduct ticket for interference with administration of rules. | Bolton | May 9, 2023 |

The three remaining defendants – Librarian Bomer, Grievance Coordinator Bolton, and Prison Counselor Collision – filed a motion for summary judgment on June 4, 2025, regarding Plaintiff's remaining First Amendment retaliation claims.

In the opinion of the undersigned, Defendants have shown that no genuine dispute of material fact remains as to Plaintiff's First Amendment retaliation claims.

Accordingly, it is respectfully recommended that the Court GRANT the Defendants'

motion for summary judgment.

## II.  Factual Allegations

This Court issued a screening opinion on March 29, 2024.    In that opinion, the

Court provided the following summary of the facts, in pertinent part:

> Plaintiff arrived at MBP on February 22, 2023. (*Id.*, PageID.7.) He alleges that his "allowable excess legal property was searched prior to leaving [Ionia Correctional Facility (ICF)] and once again when it arrived at MBP." (*Id.*) Plaintiff was assigned to general population on February 28, 2023. (*Id.*) On March 23, 2023, Plaintiff filed a grievance against Defendant Bomer, claiming that Defendant Bomer was "intentionally refusing to allow [Plaintiff] to meet with a competent legal writer for preparation of legal court documents." (*Id.*, PageID.8.) However, on April 4, 2023, Plaintiff was classified to the MBP segregation unit. (*Id.*) He received his property on April 7, 2023. (*Id.*)

> On April 5, 2023, Defendant Bomer issued a contraband removal record to Plaintiff, alleging that Plaintiff's property included pages from a "2017 SADO defender habeas book, with property of AMF library stamped in red." (*Id.*) Plaintiff contends that these pages were no longer current, and that the AMF librarian allowed him to "have the outdated pages instead of throwing them in the trash years ago." (*Id.*, PageID.9.) Plaintiff suggests that because the pages are no longer current, "the plausible reason for Defendant Bomer['s] actions is retaliation" for Plaintiff filing a grievance. (*Id.*)

> On April 6, 2023, Defendant Bomer's assistant, non-party Chisholm, issued a class II misconduct ticket for possession of stolen property and theft to Plaintiff. (*Id.*) Plaintiff was found not guilty following a hearing on April 11, 2023. (*Id.*, PageID.10.) On April 13, 2023, Plaintiff "requested Defendant Bomer to return his confiscated legal property to no avail." (*Id.*)

> Plaintiff filed a grievance against Defendant Bomer regarding the failure to return the legal property on April 19, 2023. (*Id.*) On April 26, 2023, Defendant Hoult issued a Notice of Intent (NOI) in conjunction with Defendant Bomer's April 5, 2023, contraband removal record. (*Id.*, PageID.11.) Plaintiff claims that the only plausible reason for Defendant Hoult to issue the NOI was to retaliate against Plaintiff because he was

3

found not guilty of the class II misconduct and had filed a grievance against Defendant Bomer. (*Id.*) On May 1, 2023, Plaintiff filed a grievance against Defendant Hoult. (*Id.*)

On May 2, 2023, Defendant Collison conducted an administrative hearing regarding the NOI. (*Id.*) However, the hearing was adjourned because Defendant Collison "did not have the evidence identified in Defendant Hoult's April 26, 2023 NOI." (*Id.*) The next day, Defendant Hoult was walking through Plaintiff's unit and told Plaintiff, "I'm going to make a round tomorrow. You show me in the prisoner personal property [policy] where it says you can have your property." (*Id.*, PageID.12.) Plaintiff filed a grievance against Defendant Hoult regarding that statement, claiming that Defendant Hoult's remark "establish[ed] that he [was] actually [the] hearing officer." (*Id.*)

On May 9, 2023, Defendant Bolton issued Plaintiff a class II misconduct ticket for interference with the administration of rules. (*Id.*) Plaintiff claims that Defendant Bolton would not have issued the report if Plaintiff had not filed a grievance about Defendant Hoult. (*Id.*) On May 10, 2023, Plaintiff "provided Defendant Bolton notice of Bolton's retaliation." (*Id.*)

On May 18, 2023, Plaintiff asked Defendant Bomer for legal writer assistance to prepare a § 1983 complaint. (*Id.*, PageID.13.) Plaintiff identified Defendant Bolton as one of the purported defendants. (*Id.*) Defendant Bomer "intentionally refused to assist." (*Id.*, PageID.14.) Plaintiff contends that Defendant Bomer did so to retaliate against Plaintiff for his grievances. (*Id.*)

Plaintiff goes on to suggest that the May 18, 2023, incident was not the first time Defendant Bomer retaliated against him and refused him access to the courts. (*Id.*, PageID.15.) Plaintiff alleges that at some time in March of 2023, he asked Defendant Bomer for legal writer assistance to prepare and file: (1) an appeal of an order in Jackson v. Pynnonen, No. 2:20-cv-170 (W.D. Mich.); and (2) an appeal from orders in Jackson v. Davids, No. 1:21-cv-1060 (W.D. Mich.). (*Id.*)

According to Plaintiff, he wanted to appeal from the denial of his motion for relief from judgment in Jackson v. Pynnonen. (*Id.*) Plaintiff contends that he lost such relief because Defendant Bomer provided Plaintiff the notice of appeal after the filing deadline had expired, and because Defendant Bomer failed to "provide [Plaintiff] with the requested cause in writing, a response, or his court papers" when the Sixth Circuit directed Plaintiff to show cause why his appeal should not be dismissed

4

as untimely. (*Id.*, PageID.16.) Plaintiff contends that in Jackson v. Pynnonen, he was challenging conditions that he encountered during a prior incarceration at AMF; specifically, an incident that occurred on April 15, 2020, when Plaintiff was pepper sprayed, lost consciousness, and then was placed in restraints for two days "without a shower or the ability to wash the chemical off his body." (*Id.*, PageID.17.)

Plaintiff also wanted to appeal various orders in Jackson v. Davids, where Plaintiff challenged prison conditions he encountered during his incarceration at ICF. (*Id.*) Specifically, Plaintiff alleged that medical staff refused to provide Plaintiff with his prescribed eye medication until he took a COVID-19 test. (*Id.*, PageID.18.) Staff also cancelled Plaintiff's scheduled appointment with the optometrist. (*Id.*)

On April 7, 2023, Defendant Bomer came to Plaintiff's cell in segregation "in a very hostile and aggressive manner demanding that [Plaintiff] affix his signature to papers addressed to a Mr. Thomas." (*Id.*) Plaintiff claims that even though Defendant Bomer knows that Plaintiff is hearing impaired, he issued a class II misconduct ticket for disobeying a direct order when Plaintiff turned to retrieve his hearing aids. (*Id.*) Plaintiff filed a grievance. (*Id.*, PageID.19.) He contends that on April 10, 2023, because of that grievance, Defendant Bomer refused to provide Plaintiff "state and federal precedent and court opinions needed for [Plaintiff] to prepare and file non-frivolous legal court papers on his own." (*Id.*) Plaintiff filed another grievance. (*Id.*) On April 11, 2023, Defendant Bomer refused to provide Plaintiff "with receipts properly itemizing his legal court documents that are in Bomer's possession." (*Id.*)

Plaintiff alleges further that Defendant Bomer refused to provide Plaintiff legal writer assistance to prepare and file a timely notice of appeal in Jackson v. Perttu, No. 2:21-cv-37 (W.D. Mich.), as well as to prepare and file "an application for permission to file a motion to lift stay, a motion to file an amended habeas corpus application, an amended habeas corpus application, and an affidavit." (*Id.*) Plaintiff asked for such assistance on April 10, 2023. (*Id.*, PageID.21.) He claims, however, that Defendant Bomer did not provide the notice of appeal until May 4, 2023. (*Id.*) Plaintiff alleges that as a result, the Sixth Circuit directed Plaintiff to show cause why his appeal should not be dismissed as untimely. (*Id.*, PageID.21–22.) On May 16, 2023, Plaintiff asked for legal writer assistance to prepare a response to the Sixth Circuit's order. (*Id.*, PageID.22.) Defendant Bomer refused to provide such assistance but gave Plaintiff a copy of the Sixth Circuit's order on June 22, 2023. (*Id.*)

On April 26, 2023, Plaintiff asked Defendant Bomer for legal writer assistance for "preparing and filing judicial review of the MDOC hearings administrator's April 20, 2023, request for rehearing response." (*Id.*, PageID.25.) Plaintiff claims that Defendant Bomer did not respond to his request until June 22, 2023, when he brought a letter to Plaintiff's cell. (*Id.*) The letter was dated June 20, 2023, and stated in part: "I regret to inform you I won't be able to assist you in filing a judicial review, as there is no legitimate reason why you missed the filing deadline." (*Id.*)

On May 5, 2023, Defendant Collison conducted an administrative hearing regarding the NOI Defendant Hoult issued to Plaintiff. (*Id.*, PageID.39.) Plaintiff claims that he did not receive a copy of the hearing report. (*Id.*, PageID.40.) When he asked Defendant Collison, Defendant Collison "feigned memory loss regarding the decision that he made at the hearing, thereby hindering any appeal that may have been available to [Plaintiff]." (*Id.*)

On May 8, 2023, Plaintiff gave Defendant Bomer a legal photocopy disbursement authorization form and asked him to make copies of a contraband removal record, misconduct report, and class II hearing report. (*Id.*, PageID.22.) Defendant Bomer refused, telling Plaintiff, "I don't make same day copies." (*Id.*)

On May 12, 2023, Plaintiff asked Defendant Bomer to make copies of a request for rehearing response dated April 20, 2023; a January 20, 2023, request for rehearing; a January 9, 2023, class I misconduct report for assault and battery and threatening behavior; and a November 6, 2022, assault and battery threatening behavior misconduct report. (*Id.*, PageID.26.) Plaintiff claims that he wanted to challenge the sufficiency of the evidence and raise an assertion that the hearing officer violated state law. (*Id.*) Defendant Bomer refused to provide assistance. (*Id.*)

On May 22, 2023, Defendant Bomer told Plaintiff that legal writer inmate Edward Pointer-Bey needed to meet with Plaintiff. (*Id.*, PageID.23.) The meeting was scheduled for May 23, 2023. (*Id.*) However, on that date, Plaintiff's housing unit was on lockdown. (*Id.*) By the time Defendant Bomer rescheduled the meeting, "the time for filing a judicial review had passed." (*Id.*) According to Plaintiff, the meeting was rescheduled for May 30, 2023, but Defendant Bomer "refused to ensure that the meeting took place." (*Id.*, PageID.24–25.)

[…]

6

On May 26, 2023, Plaintiff was in the law library and was unable to use the Lexis Advance law library computer. (*Id.*, PageID.23.) He asked Defendant Bomer for assistance. (*Id.*) Defendant Bomer refused, stating, "If you get to a Level IV a clerk (prison[er]) will help you operate the Lexis Nexus program." (*Id.*)

On June 5, 2023, Plaintiff told Defendant Collison that Defendant Bomer had been refusing Plaintiff's requests for photocopies, thus restricting Plaintiff's access to the courts. (*Id.*, PageID.44.) Defendant Collison responded, "It is not my job to interpret MDOC policy." (*Id.*) He also told Plaintiff that he was not Defendant Bomer's supervisor. (*Id.*) Plaintiff claims that Defendant Collison refused to report Defendant Bomer's misconduct "to the appropriate MBP official." (*Id.*)

On June 9, 2023, Defendant Bolton "addressed the merits of [Plaintiff's] request for a Step I grievance form and denied the request thereby preventing a Step II appeal of his merits-based findings." (*Id.*, PageID.23.) Defendant Bolton denied another request for a Step I grievance form on June 12, 2023. (*Id.*, PageID.45.)

Plaintiff goes on to allege that on June 13, 2023, Defendant Collison came to Plaintiff's cell during legal mail rounds and told Plaintiff:

> "You should stop thinking about your lawsuit against Mr. Bomer and Deputy Hoult. We have a brotherhood, and I'm advising you because I'm a Roman Catholic that bad things happen here all the time to prisoners that cause problems to the brotherhood. They get killed and assaulted. Their mail gets los[t], they cannot get legal writer assistance in time to meet their deadlines, their property is confiscated, los[t,] or destroyed, and misconduct reports are fabricated. You will be found guilty Jackson."

(*Id.*, PageID.4.) Later that day, during a law library session, Defendant Bomer threatened to have Plaintiff killed if Plaintiff brought legal action against him, Defendant Hoult, or any other staff member at MBP. (*Id.*, PageID.5.) Defendant Bomer told Plaintiff, "You're in Marquette. We have a brotherhood up here. If you attempt any legal action against me, Hoult, or any others in the brotherhood you will be killed." (*Id.*) Plaintiff claims that Defendant Bomer had made similar remarks on May 26, 2023. (*Id.*)

That same day, Plaintiff was "falsely imprisoned in solitary confinement . . . without notice, or [a] misconduct report being issued." (*Id.*) All of

Plaintiff's property, except for what was permitted in segregation, was taken to the MBP property room. (*Id.*) Plaintiff alleges that he was kept in solitary confinement for seven days, until June 20, 2023. (*Id.*) During his time in solitary confinement, Plaintiff "noticed that after each meal he would become nauseated and vomit the contents of the meals. [As of the date of Plaintiff writing his complaint,] [t]he side effects continue[d] to . . . exist." (*Id.*, PageID.6.)

Plaintiff further claims that the cell that he was placed in had been "freshly painted and emitted very strong gas or vapor fumes." (*Id.*) The air ducts "contained dust as thick as sheep's wool, thereby creating poor ventilation." (*Id.*) Plaintiff contends that he continues to cough up phlegm as a result of those conditions, and that he "suffers from the effects of anxiety, humiliation, and daily degradation." (*Id.*)

On June 14, 2023, Defendant Collison came to Plaintiff's cell in segregation and said, "Didn't I tell you yesterday what would happen." (*Id.*) On June 22, 2023, Defendant Bomer came to Plaintiff's cell and said, "Here is your legal shit, I am not providing legal writer service. Oh yeah, enjoy your food." (*Id.*, PageID.7.) Plaintiff alleges that later that day, while eating dinner, he "discovered a razor blade inside his biscuit when he broke it apart." (*Id.*)

(ECF No. 22, PageID.189-196.)

## III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.    Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).    The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."    *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251−52 (1986)).    The court must consider all pleadings, depositions, affidavits,

and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.  Analysis

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*   Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).   The Sixth Circuit has also employed a burden-shifting approach:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant.   If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

Thaddeus-X, 175 F.3d at 399.

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his

own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)).   This right extends to grievances that are, in accordance with MDOC policy, raised with staff prior to submitting a formal, written grievance.   *Maben v. Thelen*, 887 F.3d 252, 265-66 (6th Cir. 2018) (explaining that it would be "unfair and illogical" to require prisoners to attempt informal resolution of a grievable issue, and then limit the recognition of protected conduct to filing formal, written grievances); MDOC PD 03.02.130(Q) (requiring a prisoner to attempt resolution of the grievable issue prior to filing a Step I grievance).   "If the grievances are frivolous, however, this right is not protected."  *Id.*   Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives."  *Smith*, 250 F.3d at 1037.   "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal."  *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara,* 680 F.3d 686, 699 (6th Cir. 2012)).

Generally, an action is deemed adverse when it increases the restrictions placed on a prisoner, or decreases the privileges that prisoner enjoys.  *Maben*, 887 F.3d at 266 (citing *Hill v. Lapin*, 630 F. 3d 468, 474 (6th Cir. 2004)).   To determine whether a misconduct ticket constitutes an adverse action, courts look to "both the punishment [the prisoner] could have faced and the punishment he did face."  *Id.* (citing *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004)).

While evidence of temporal proximity may not be enough on its own to survive

summary judgment on a retaliation claim, the Sixth Circuit does construe such proximity as a factor in support of a causal connection. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001).

### A. Librarian Bomer (Claims 1-4)

The majority of Jackson's claims center around MBP staff confiscating a habeas guide by the State Appellate Defender Officer stamped "property of AMF" in red ink.   Two of Jackson's remaining retaliation claims against Librarian Bomer involve the confiscated documents.   First, in Claim 1 in the above table, Jackson alleges that Bomer retaliated against him for a grievance weeks earlier by issuing a contraband ticket for the legal guide pages.   (ECF No. 1, PageID.8.)   Next, in Claim 2, Jackson asserts Bomer further retaliated against him by refusing to return the guide.  (*Id.*, PageID.9.)

To set forth a viable First Amendment retaliation claim, Jackson must establish a causal nexus between his protected conduct and the alleged adverse action.   *Smith*, 250 F.3d at 1037.   Jackson asserts that he is in MDOC custody unconstitutionally and possessed the legal guide to understand federal habeas law. (ECF No. 113, PageID.1162.)   Jackson claims that he "was able to convince a Baraga Correctional Facility (AMF) Librarian to allow [him] to have some pages to an outdated 2017 SADO Defender habeas book."   (*Id.*)   Jackson says that he brought the pages with him to Marquette Branch Prison.   (*Id.*)   Jackson also asserts that Librarian Bomer knew that Jackson did not have access to the 2017 guide in the MBP law library because the document was out of date.   (*Id.*, PageID.1163.)

11

In his affidavit, Bomer asserts that he confiscated the legal guide because he suspected documents – stamped "property of AMF" – were indeed property of AMF rather than MBP.[1]   (ECF No. 97-4, PageID.989 (Bomer Affidavit).)   Bomer further contends that "though inmates are permitted to possess originals on loan (in certain circumstances), prisoners are not permitted to keep originals or take originals (or any portion thereof) with them to other facilities."   (*Id.*, PageID.989.)   Additionally, Bomer states in his affidavit that he would have taken the same action regardless of whether Jackson had filed the grievance weeks earlier.   (*Id.*, PageID.992.); *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007) ("After a plaintiff shows that his protected conduct was a motivating factor in the defendant's action, the defendant may thwart the retaliation claim by showing that it would have taken the same action even without the protected activity.")   Further, Bomer explains in his affidavit that he gave the documents to the assistant deputy warden after issuing the contraband removal notice.   (*Id.*, PageID.990.)

In the opinion of the undersigned, there is no genuine issue of material fact as to why Bomer confiscated the legal guide and refused to return the documents to Jackson.   Librarian Bomer confiscated the documents because they were stamped property of another facility and MBP prisoners cannot have unauthorized documents. Therefore, the undersigned respectfully recommends that the Court dismiss Claims 1 and 2 in the above table against Defendant Bomer.

---

[1]     AMF is the three-letter identifier for Baraga Correctional Facility in Baraga, MI.

Additionally, Jackson asserts that Librarian Bomer retaliated against him by refusing to provide a legal writer (Claim 3).[2]  Specifically, Jackson alleges that Bomer cancelled meetings with a legal writer on May 23 and May 30, 2023.   In his affidavit, Bomer states that he did not personally cancel either meeting.   (ECF No. 97-4, PageID.991.)   Further, Bomer asserts that both meetings were scheduled for the following week in accordance with MBP's ordinary practices.   (*Id.*)   Jackson does not directly address these assertions in his response.

In the opinion of the undersigned, Jackson cannot establish that Bomer took an adverse action against him because he did not cancel the meetings.   Accordingly, the undersigned respectfully recommends that the Court dismiss Claim 3 against Defendant Bomer.

Further, in Claim 4, Jackson alleges that Bomer retaliated against Jackson by refusing to provide copies and Lexis Advance research assistance.   MDOC policy prohibits librarians from conducting legal research for inmates.   (ECF No. 97-6,

---

[2]    Jackson has a well-defined history of asserting that he was denied a legal writer.   This Court has previously stated:

> The right of access to the courts has never been equated with the access to legal materials in the prison library.   *Walker v. Mitzes*, 771 F.2d 920, 932 (6th Cir. 1985); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) (a sub-par library or legal assistance program does not establish relevant actual injury). … This Court set forth some of Jackson's extensive litigation history in *Jackson v. Berean*, No. 1:18-cv-1075 (W.D. Mich. Mar. 19, 2019) (ECF No. 20, PageID.408.) and explained how Jackson has demonstrated that he is "fully capable of litigating cases without the assistance of a legal writer." (*Id.*, PageID.409.)

*Jackson v. Kokko, et al.*, No. 2:18-cv-15 (W.D. Mich. April 24, 2020) (ECF No. 96.)

PageID.1023 (MDOC PD 05.03.115).)    As such, Bomer may only assist inmates with troubleshooting on Lexis.    In his affidavit, Bomer explains that he provided Jackson with the same written Lexis tutorial available to other inmates.  (ECF No. 97-4, PageID.990.)   Jackson does not dispute this assertion.

Therefore, in the opinion of the undersigned, Jackson did not suffer any adverse action from Bomer's assistance.    In summary, Bomer provided the services he was allowed to perform under MDOC policy and gave Jackson the Lexis guide. Accordingly, the undersigned respectfully recommends that this Court dismiss Claim 4 against Bomer.

Finally, Jackson alleges that Bomer retaliated against him by refusing to provide copies of the contraband removal form, misconduct report, hearing report regarding the confiscated legal guide, and other misconduct hearing documents (Claim 5).  (ECF No. 1, PageID.22-26.)   In Bomer's affidavit, he says that he did not provide the requested documents because Jackson lacked funds to pay for the copies and the request did not qualify for an institutional loan.    (ECF No. 97-4, PageID.990.)   Jackson responds that the MDOC PD 05.03.116 requires the prison to grant a loan for copies of documents "necessary for the prisoner to file with the court or serve on a party to a lawsuit."   (ECF No. 114, PageID.1182 (Jackson's Affidavit).)

Jackson's claim against Bomer is retaliation.  As such, the inquiry is not whether Bomer was correct about the MDOC policy, but whether Bomer was motivated by Jackson's protected conduct.   Here, there is no genuine issue of material fact regarding why Bomer denied Jackson's request for documents – Bomer

believed he was acting in accordance with prison policy.   Therefore, Bomer has established that he did not deny Jackson the copies out of retaliation for protected conduct.   Instead, Bomer did not provide copies because Jackson lacked sufficient funds.   Accordingly, the undersigned respectfully recommends that this Court dismiss Claim 5 against Bomer.

If the Court accepts this recommendation, none of Plaintiff's claims against Defendant Bomer will remain.

**B. Prison Counselor Collision (Claims 5 & 6)**

As outlined in Claims 5 and 6 in the table above, Jackson has two remaining retaliation claims against PC Collision.   First, in Claim 5, Jackson asserts that PC Collision and Librarian Bomer retaliated against Jackson by refusing to provide photocopies of the contraband removal form, misconduct report, hearing report regarding the confiscated legal guide, and other misconduct hearing documents. Defendants argue that this claim did not survive screening.   (ECF No. 97, PageID.965.)

This Court stated in its March 29, 2024, screening opinion that Plaintiff alleged PC Collision "(1) refused to provide a copy of the administrative hearing report regarding the NOI issued by Defendant Hoult to Plaintiff; (2) refused to provide oversized envelopes to Plaintiff; and (3) threatened that Plaintiff would experience negative consequences, including being killed and assaulted, if he continued to press forward on his legal actions against MBP staff."   (ECF No. 22, PageID.205.)   This list does not include Jackson's photocopies claim.   This Court

later dismissed Jackson's claims regarding the oversized envelopes and negative consequences for lack of exhaustion.   (ECF No. 54.)   Therefore, in the opinion of the undersigned, Defendants are correct in their assertion that Jackson's retaliation claim against PC Collision regarding the photocopies is no longer active.[3]

Additionally, Jackson alleges that PC Collision retaliated against him for filing grievances by refusing to promptly provide him with a Notice of Intent to Conduct an Administrative Hearing ("NOI") report.   (ECF No. 1, PageID.40.)   Jackson claims the delay hindered "any appeal that may have been available." (*Id.*)   However, the Defendants provide an affidavit from MBP Litigation Coordinator Mathie asserting that there is no administrative appeal available to a NOI hearing.   (ECF No. 97-11, PageID.1040.)

As noted above, to establish a First Amendment retaliation claim, Jackson must assert an adverse action that would deter a person of ordinary firmness from engaging in that conduct.   This Court has previously stated, "the failure to provide a copy of an incident form is not conduct that is 'capable of deterring a person of

---

[3]    Alternatively, if Jackson's claim had survived screening, Defendant Collision stated in his affidavit that the photocopy request was denied because Jackson had insufficient funds to pay for the copies. (ECF No. 97-4, PageID.990.)   The same analysis applies to Jackson's photocopy retaliation claims against Defendant Bomer and Defendant Collision.   PC Collision has established that he did not deny Jackson the copies out of retaliation for protected conduct.   Therefore, the undersigned respectfully recommends the Court grant Defendant's motion for summary judgment as to Jackson's photocopy retaliation claim against PC Collision, assuming a claim exists at all.

ordinary firmness' from filing a grievance." *Howard v. Bauman*, No. 2:19-cv-195, 2019 U.S. Dist. LEXIS 196483, at *16 (W.D. Mich. Nov. 13, 2019).

Here, in the opinion of the undersigned, there is no genuine issue of material facts as to whether Jackson suffered an adverse action. Jackson has not established that he suffered any action that would deter a person of ordinary firmness from engaging in an appeal because such an appeal did not even exist. Therefore, the undersigned respectfully recommends that the Court dismiss Claim 6 against PC Collision.

If the Court accepts this recommendation, none of Plaintiff's claims against PC Collision will remain.

### C. *Grievance Coordinator Bolton (Claim 7)*

Grievance Coordinator Bolton issued Jackson the following Class II Misconduct Report for Interference with Administrative Rules on May 3, 2023:

| MISCONDUCT REPORT | | | | | CSJ-228 10/10  4835-3228 |
|---|---|---|---|---|---|
| Prisoner Number: 748757 | Prisoner Name: Jackson | | Facility Code: MBP | Lock: GB47 | Violation Date: 05/03/2023 |
| Time and Place of Violation: 1300, Grievance Coordinator Office | | Contraband Removal Record Provided to Prisoner?  ☐ Yes  Date | | | ☒ N/A |
| Misconduct Class: ☐ I ☒ II ☐ III | | Charge(s): Interference with the Adminstration of Rules | | | |
| Describe Violation (If contraband involved, describe in detail; identify any other employee witnesses): While investigating Grievance MBP 23/05/00438/28I which was written by Prisoner Jackson 748757 it was found that prisoner Jackson was lying about his attempted resolve prior to filing this grievance. Prisoner Jackson knowingly stated, "April 28th 2023 I attempted to resolve this issue with Warden Schroeder, and Deputy Hoult utilizing communication to no avail". This false statement was discovered on 5/3/23 the day this grievance arrived and was investigated. See attached Grievance MBP 23/05/00438/28I the highlighted sections. See attached memorandum from ADW Hoult. Examination of camera footage from in front of cell GB47 is requested for the date of 4/28/2023 as at no time did ADW Hoult communicate cell side with prisoner Jackson. Jackson 748757 identified by prior contact and G-block cell assignment. Authorization to author this ticket was received from Warden Schroeder prior to submitting. See attached E-mail | | | | | |
| Reporting Staff Member's Name (Print) Q.Bolton | | Reporting Staff Member's Signature | | Date and Time Written 05/09/2023, 14:25Hrs | |
| | | REVIEW | | | |

(ECF No. 42-4, PageID.516)

Jackson alleges that Grievance Coordinator Bolton issued the misconduct report in retaliation for a grievance Jackson wrote on Deputy Warden Hoult.   (ECF No. 1, PageID.12.)   In Bolton's affidavit, he asserts that he wrote the misconduct report based on the information he received from interviewing Deputy Warden Hoult and upon reviewing surveillance video footage.   (ECF No. 97-15, PageID.1059.) Specifically, Bolton states that Hoult said he never spoke with Jackson, and the video surveillance depicted that Jackson and Hoult did not speak during the alleged timeframe.   (*Id.*)   Bolton also included these details in the misconduct report shown above.

Accordingly, viewing the evidence in the light most favorable to the non-moving party, Jackson has not established a causal connection between the grievance and the misconduct report.   Therefore, the undersigned respectfully recommends that the Court dismiss the sole remaining claim against Grievance Coordinator Bolton.

## V.   Qualified Immunity

Defendant argues that he is entitled to dismissal of the complaint against him based upon qualified immunity.   "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Once a defendant raises the qualified

immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 78 (2017)

(internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*,

577 U.S. 7, 11 (2015)).    As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63−64 (2018).

In the qualified immunity context, if the facts alleged and evidence produced,

viewed in the light most favorable to the plaintiff, would permit a reasonable juror to

find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate.    *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

The Defendants argue that they are entitled to qualified immunity because they did not violate Jackson's clearly established constitutional rights.    (ECF No. 97, PageID.968-69.) The undersigned agrees; because there are no genuine issues of material fact, it is the undersigned's opinion that the Defendants are entitled to qualified immunity in their individual capacities.    *See Phillips*, 534 F.3d at 538 ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"    (quoting *Harlow*, 457 U.S. at 818)).

## VI.    Recommendation

For the reasons set forth above, it is the undersigned's opinion that there are no genuine issues of material facts regarding Jackson's remaining retaliation claims against Defendants Bomer, Collision, and Bolton.    It is respectfully recommended that the Court grant Defendants' motion for summary judgment (ECF No. 97) and dismiss the remaining claims.

Dated:    December 15, 2025                        /s/ *Maarten Vermaat*
                                                 MAARTEN VERMAAT
                                                 U.S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to file timely objections may constitute a waiver of any further right of appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).